Good morning. Can you hear me? My name is Sarah Chiarelli, and I represent the petitioner. The immigration judge in this case narrowed the petitioner's deportation hearing to the issue of whether his asylum claims were precluded by the persecutor bar. The judge effectively declared during the hearing that petitioner's persecution claims were not at issue. This denied petitioner the opportunity to rehabilitate his claims regarding the persecution he suffered. That ended up being the basis for the judge's denial of asylum. Counsel, I had a different impression when I read the transcript. I had the impression that the judge walked in there and said it doesn't look like there's going to be a credibility problem because the asylum officer thought that Kehila was credible. But then the cross-examination changed the judge's mind, and he said it looks as though credibility is a big issue. And he invited counsel to bring out what he wanted to on redirect examination and invited a supplemental brief on it. So I don't understand why that's a due process violation. I have a couple of points to make on that. The credibility issues that came up were regarding the persecutor bar and the activities that Petitioner engaged in while he was in the military. And in fact, during redirect, as Petitioner's counsel was questioning him, whenever he tried to go into the issues about the persecution that he suffered, the judge in fact cut him off and said let's get on with the persecutor bar. And in fact, he said during redirect, the issue is not whether your life would be difficult if you returned to Algeria. I don't speak for the service, but I don't believe they're really contesting that. The issue today is whether or not you engaged in activities which made you a persecutor. But, counsel, the immigration judge made an adverse credibility finding. So weren't you on notice when you made your appeal to BIA that that was an issue? Here, also, your brief failed to argue that the adverse credibility finding was not supported by substantial evidence. Is that an argument you're trying to make here? Well, first of all, we weren't on notice that credibility regarding the persecution that Petitioner suffered was an issue until the immigration judge's decision. And we argued that, you know, we argued that he didn't have the opportunity to rehabilitate his claims, and, you know, and I think that the substantial evidence was, you know, argument was subsumed in that. But the BIA, I don't think they really understood that Petitioner didn't have the opportunity to rehabilitate himself during the hearing, because when they discussed the credibility issue, they discussed it only in terms of the persecutor bar. So if you look at the BIA's opinion at the end, it says, oh, okay, so Petitioner was on notice, this due process claim is wrong because the Petitioner was on notice that the persecutor bar was an issue. It didn't really address the fact that Petitioner didn't have the opportunity to really discuss the inconsistencies that arose regarding whether he suffered persecution. Let me ask you about something else. Since all of the countries with asylum laws have copied them from that U.N. convention, France is similar to ours. Kihilo went to France. If he really was scared that the Islamic terrorists were going to get him in Algeria, I don't see why he went back to Algeria instead of applying for asylum in France. Well, he couldn't, you know, I believe he testified, he couldn't manage to get an asylum application together. He was living on the streets. He didn't exactly, he didn't say there was anything that stopped him. He just said he didn't, really. Right. He was there for one month until, you know, and then his visa expired, and he had to go back to Algiers. But he went to Algiers for two whole years. Right. Doesn't that undermine his claim? The cases make clear that, you know, fear, the fortitude in the face of fear needs to be distinguished from the lack of fear. And, you know, for example, Demese, that case holds that, you know, where in that case, the appellant had lived for two years in the country where he claimed he was persecuted, and the court there found that his claims weren't undermined. I think the court's consistent that going back or staying doesn't necessarily undermine a persecution claim. And there's no evidence that he didn't face, there's no evidence that he didn't face the fear of persecution while he was living in Algiers for two years. In fact, the evidence shows that he was just trying to find a way out that whole time. What about his brother? His brother-in-law? Yeah. Doesn't he have a brother or brother-in-law who's in essentially the same situation he is, who's been able to live safely and peacefully in another part of the country? His brother-in-law is a high-ranking officer in the military, which is contrary to what Petitioner's position was in the military, which was a conscript that was basically used as cannon fodder to draw out terrorist groups. So, and, you know, the brother-in-law has the protection of the military and also moves around quite a bit. Well, was it unreasonable for the I.J. to rely upon that? It wasn't in this instance, because the brother-in-law had, you know, there's no evidence that the brother-in-law was subject to the vendetta that Petitioner's uncle has against him, that he, you know, that a leader of terrorist groups would The brother-in-law would be identified, I would presume, in the eyes of the terrorist or the government as having the same relation to your client's uncle, right? Well, he's not related. He's not directly related. Marriage. He is related by marriage. The brother-in-law is married to the Petitioner's sister. Yes. And the sister and your client share the same uncle? Yes. And live in the same household, is that right? Petitioner stayed with his brother-in-law and sister while he was in Algiers waiting for to leave the country. So the government's witness, the asylum officer, testified and confirmed at the end of the hearing that he wasn't concerned with Petitioner's credibility. And at the post, the government submitted a post-hearing brief. And while they, you know, briefly mentioned that credibility may have been an issue regarding the persecution claims in their facts section, they didn't actually argue it in their legal section. In fact, their legal brief solely concerned the persecutor bar. So it wasn't until the immigration judge's decision that Petitioner even knew that his credibility was at issue regarding his persecution claims. But he knew it on his appeal, did he not? He did. And it was briefed and argued in the appeal. I thought right during the IJ's hearing, the IJ turned around on him and said, looks like credibility is going to be real important here. He did, but that was regarding the persecutor claims. So, you know, there were a lot of problems. Once you call a man a liar, he knows his credibility is at issue no matter what you've called him a liar about. Well, first of all, this case is distinguishable from cases where there's lying and evidence of lying. There was clearly a problem with the translation. Credibility is a polite way of saying it. Your credibility is at issue, a very polite way of saying it. I think the problem was that there was a language barrier. The interpreter did not speak the same dialect as Petitioner. So, you know, I don't think that the interpreter did a bad job or anything, but I think that there were definitely some instances where the question being asked. Secondly, even the government's witness recognized that in Arabic, when you're translating it, there's an issue with singular and plural. So that was making Petitioner's testimony regarding the persecutor bar very difficult because it was unclear whether it was him that committed these atrocities as part of the military or whether it was his unit. So it all came up in the context of that. So if you look at the Petitioner's statements to the asylum officer and you look at his declarations and you look at his testimony, it's uncontroverted that he suffered persecution. There are some inconsistencies about whether it was 4 hours or 5 hours and, you know, items like that. But the inconsistencies have to do with how he was beaten and not whether he was beaten by these groups. You have one minute left. Do you want to save it? I would like to save it for rebuttal. I thought I took your statements to mean that I would just if I had something to say. Well, you don't get rebuttal on top of your time. You get rebuttal out of your time. I will reserve the rest of my time for rebuttal. Thank you. You don't get rebuttal on top of the assigned time. You just, if you feel like it's better to save the rest, just save what you've got. May it please the Court. Kirk Sheriff on behalf of the Attorney General. Your Honors, I think the key issue is the due process argument because there is no evidence of a due process violation and no prejudice, even if there were. And given that, the petitioner has failed to argue either at the BIA or in the evidence to support the adverse credibility finding. There's no argument on that point. Let me ask you this. Didn't the immigration judge give your opponent an opportunity to file a supplemental brief if desired? And was that declined? Yes, it was, Your Honor. I think I can even give you the citation. That's all right. I just wanted, that was my memory. My review of the record showed that there was a request by the service to the IRS to file a supplemental brief and then there was colloquy and the Petitioner's Counsel specifically declined an opportunity to file a brief. Did the government raise credibility with respect to persecution of the petitioner or, in other words, the basis for asylum in its brief BIA? The government argued. I would have thought the answer to that would have been a yes or a no. The answer is yes, I believe, that the government argued credibility at the hearing before the immigration judge. That wasn't my question. I understand, Your Honor. It's really a pretty simple question. Did the government raise the issue of credibility vis-à-vis the asylum claim before the BIA? I think the government's brief before the BIA, as I recall it, focused primarily on the persecutor bar. Does that mean the answer is no? I think inherent in that is a credibility argument because if you were to believe the asylum officer and if you were to believe the Petitioner's testimony before the or statements before the asylum officer, the persecutor bar would apply. Now, in essence, any argument by the Petitioner in opposition to that raises the credibility issue because the Petitioner's testimony at the immigration hearing was contrary to what he told the asylum officer. Gee, I would have thought that credible testimony by the Petitioner would have assisted in defeating, if you will, at the IJ or the BIA level the claim that he, that the persecutor bar applied. Credible testimony where, though? Because the point is that credible testimony by the Petitioner going in, I think the service's position before the immigration hearing was that, yes, the Petitioner appears to have testified credibly before the immigration judge, I mean, I'm sorry, before the asylum officer, because the Petitioner did not talk about physical beatings, did not talk about all the more elaborate harm that he supposedly suffered in these incidents. He mentioned an arrest and a detention, but he did not go further as he did in the immigration hearing. And, yes. Let me try the question this way. Okay. If we have this same case and in the appeal to the BIA the Petitioner raised nothing but issues surrounding the persecutor bar and said nothing about the adverse credibility determination vis-à-vis asylum. The Petitioner said nothing? Yes. Wouldn't the government argue that that had been waived? That the adverse credibility determination had been waived? Yes. Well, as my mom used to say, sauce for the goose. Now ---- You know, help me here. How do I get ---- I'm telling you, I've got a problem with this. It appears to me that you did, that the government did not raise this issue before the BIA. And unquestionably, if the reverse were true, the government would be in here claiming that the Petitioner had waived that argument. Why hasn't the government waived it? Why hasn't the government ---- okay, you're asking why the government hasn't waived the credibility issue in support of the ---- because, well, as a preliminary matter, let's focus on the real point here. The immigration judge found and made an adverse credibility finding. The Petitioner doesn't challenge that adverse credibility finding on a substantial evidence argument. The Petitioner's whole argument on adverse credibility is the due process, alleged due process violation. Once that due process violation is found not to have occurred, there is no argument either at the BIA or before the Court, frankly, as to the substantial evidence to support the adverse credibility. So your position is that action by them relieves the government of the responsibility to argue support for adverse credibility vis-à-vis asylum before the BIA? I think so, in the sense that the government can't ---- I don't think should be expected to argue in opposition to an argument that wasn't made. Let me make sure I understand how this lays out. It goes to the asylum officer. The asylum officer believes him. At that point, credibility is not an issue. It goes into the hearing before the IJ. The IJ says, I don't think credibility is going to be an issue. And then after cross, the IJ says, looks like credibility is an issue. Have I got it right so far? Yes, you have. Now, what mistake did I make? In the sense that the asylum officer initially believed that there was no credibility issue. At the asylum hearing, the asylum officer, at the end, informs the Petitioner that you've got a problem with the persecutor. Oh, after cross and redirect? This is at the asylum office. Oh, the asylum officer? Informs the Petitioner that the persecutor bars an issue. And that, at that point ---- Your Honor, you're getting me away from my line of questioning. I'm sorry, Your Honor. I'm sorry. I'm not trying to get your whole case out. Okay. I'm trying to find out about the history of the credibility issue. Fair enough, Your Honor. But pay attention to my questions now. Yes. Because otherwise I forget what I'm trying to focus on. Credibility becomes an issue, if I recall right, after the cross before the IJ. Is that right? That's correct. Okay. Then, if I recall correctly, your side won, the government won, and the IJ said adverse credibility finding. I don't believe the guy. That's correct. Is that right? That's correct, Your Honor. So at that point, it's his problem to appeal to the BIA and say there wasn't a substantial basis on the record as a whole for the adverse credibility finding. Absolutely. Because he'd already lost on it. Have I got that right? That's correct, Your Honor. You go to the BIA, and he does appeal the adverse credibility finding, but not on the basis that there wasn't substantial evidence for it, on the basis that he didn't get a fair chance to address it. Correct. And you responded to that. That's right. Okay. But you did win on credibility before the IJ. Right. And that win on the substantial evidence to support adverse credibility was never appealed. Okay. Now I understand the timeline. Thanks. And I would point out on this due process point, Your Honors, that Petitioner has had multiple opportunities, because even frankly, although I do think it would be waived even in this event, even in the briefing to this Court to explain what exactly the prejudice was, because there's been no explanation of any prejudice. I mean, frankly, there's no violation, but there's also no prejudice. No explanation of what additional things the Petitioner would have said, how that might have affected or could have affected the outcome. It's just simply not even identified in generality, which wouldn't be sufficient, but it's not identified at all. Now, you may well be correct in that the finding on incredibility was sealed once it was not appealed to the BIA on the lack of substantial evidence. But suppose we think both the IJ and the BIA were wrong. Now, he said he had received death threats from the GIA, his uncle's terrorist organization. If we find that indeed he should have been found credible, and I'm not saying that we are going to do that, wouldn't the death threats, serious death threats, constitute past persecution with a presumption of future persecution? I think not in this case in the sense that there was never, with respect to the threats from the uncle, I mean, we're assuming complete credibility here that it credibly weren't an issue in the case. There was never anything but the threats alone, an allegation of threats alone. And those threats were never accompanied by any action, any harm that affected the Petitioner. And, in fact, I think on this point one of the keys is that for the last four years prior to leaving Algeria, the Petitioner had no harm, no incidents. There was simply nothing. He lived for two years in the military and had no actions taken against him there from 1997 to 1999. And then from 1999 through May of, I think, 2001, he lived in Algeria without any problems. And he lived with a brother-in-law who was an officer in the military. How long did he live in Algeria between the time his uncle expressed his great disappointment in his nephew and thought that he was going to kill him and the time Kehila actually left? I believe it's close to four years because it's, I think it's keyed with the time when he went into the military in 1997. And, in addition, there's the travel to France, which undermines the claim as well of a well-founded fear of persecution and that he had an opportunity. He went to a country where there's clearly an asylum possibility in any event, and he returned to Algeria. Thank you, Counsel. Thank you, Your Honor. I have one minute. I will try to be quick. So the idea that he lived in four years without any persecution is wrong. When he finished serving in the military, he found out that friends who had also served in the military had returned to their hometown and were murdered at a wedding and were strung up in the middle of the town square. That was back in his village, though, not in Algeria. It was back in the village, yes. How far away is the village from Algiers? It's about, I think, 50 to 100 miles. Fifty or 100 miles? But the terrorist acts are countrywide to this day. Well, every now and then the terrorists blow up a nightclub or something in Algiers, is that right? Sure, absolutely. But I don't think you have evidence of anything targeted toward this fellow in Algiers, do you? No, but the record is clear that these terrorist groups are widespread, and they do target individuals as well as just trying to create general mayhem. I want to just talk briefly about the failure to submit a brief regarding the credibility issue. So at the time after the hearing, Petitioner had already submitted a pre-hearing brief about the persecutor bar. The judge permitted the government to submit a post-hearing brief responding to the persecutor bar. And so the idea that we waived the right to brief the credibility issue, we didn't even know that it was an issue until the immigration judge's decision, and I am out of time. Thank you. Thank you, counsel. Kehilla v. McCasey is submitted. Guerrero v. Myers is submitted. Barks v. Crawford is submitted. And we'll hear Sierra Club v. Department of Transportation. Thank you.
judges: D.W. Nelson, Kleinfeld, Hawkins